ADAMS, J.

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| Plaintiff, | ) | CASE NO.   1:18CR73 |
| | ) | |
| v. | ) | |
| | ) | Judge John R. Adams |
| MARYAM HAGUE, | ) | |
| | ) | ORDER |
| Defendant. | ) | |
| | ) | |

Pending before the Court is Defendant Maryam Hague's motion for compassionate release. Doc. 27.   Upon review, the motion is DENIED.

Within the COVID-19 backdrop, the Sixth Circuit has recently explained this Court's duties and obligations when considering a motion for compassionate release.

> Sections 3582(c)(1)'s and (c)(2)'s parallel language and structure compel us to conclude that compassionate release hearings are sentence-modification proceedings and that courts considering motions filed under § 3582(c)(1) must follow a *Dillon*-style test. The three-step § 3582(c)(1)(A) test is as follows. At step one, a court must "find[ ]" whether "extraordinary and compelling reasons warrant" a sentence reduction. 18 U.S.C. § 3582(c)(1)(A)(i). At step two, a court must "find[ ]" whether "such a reduction is consistent with *applicable* policy statements issued by the Sentencing Commission." *Id*. § 3582(c)(1)(A) (emphasis added). The Commission's policy statement on compassionate release resides in U.S.S.G. § 1B1.13. *See* U.S.S.G. § 1B1.13 (U.S. Sent'g Comm'n 2018). Thus, if § 1B1.13 is still "applicable," courts must "follow the Commission's instructions in [§ 1B1.13] to determine the prisoner's eligibility for a sentence modification and the extent of the reduction authorized." At step three, "§ 3582(c)[ (1)(A) ] instructs a court to

> consider any applicable § 3553(a) factors and determine whether, in its discretion, the reduction authorized by [steps one and two] is warranted in whole or in part under the particular circumstances of the case."

*United States v. Jones*, 980 F.3d 1098, 1107–08 (6th Cir. 2020)(citations and footnotes omitted). However, "[i]n cases where incarcerated persons file motions for compassionate release, federal judges may skip step two of the § 3582(c)(1)(A) inquiry and have full discretion to define 'extraordinary and compelling' without consulting the policy statement § 1B1.13." *Id.* at 1111.

Initially, the Court notes that the Court would be within its discretion to deny Hague's motion based upon the fact that there are zero positive cases currently at her place of incarceration, Alderson. *See United States v. Elias*, 984 F.3d 516, 521 (6th Cir. 2021) (finding that it was not an abuse of discretion to deny compassionate release when Alderson had no reported cases and therefore only presented a speculative risk to the movant). The Court, however, will also review the 3553(a) factors as they further support denial of the pending motion.

I. § 3553(a) Factors

    a. Standard

As noted above, this Court may "not modify a term of imprisonment once it has been imposed" unless specifically authorized to do so by section 3582(c). This Court may grant compassionate release if, after considering the factors in 18 U.S.C. § 3553(a), it determines that "extraordinary and compelling reasons" warrant a reduced sentence and that "such a reduction is consistent with applicable policy statements issued by the sentencing commission." 18 U.S.C. § 3582(c)(1)(A)(i). For ease of reference, the § 3553 factors are as follows:

> (a) Factors to be considered in imposing a sentence.--The court shall impose a sentence sufficient, but not greater than necessary, to comply with the purposes set

> forth in paragraph (2) of this subsection. The court, in determining the particular sentence to be imposed, shall consider—
>
> (1) the nature and circumstances of the offense and the history and characteristics of the defendant;
>
> (2) the need for the sentence imposed—
>
> (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;
>
> (B) to afford adequate deterrence to criminal conduct;
>
> (C) to protect the public from further crimes of the defendant; and
>
> (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner;
>
> (3) the kinds of sentences available;
>
> (4) the kinds of sentence and the sentencing range established for—
>
> (A) the applicable category of offense committed by the applicable category of defendant as set forth in the guidelines—

18 U.S.C.A. § 3553.

The Sixth Circuit has noted that "District judges maintain an obligation to provide reasons" when resolving motions for compassionate release. *Jones*, 980 F.3d at 1112.

> We start by requiring a thorough factual record for our review: district courts must supply specific factual reasons, including but not limited to due consideration of the § 3553(a) factors, for its compassionate release decision. We look at the whole record in sentence-modification proceedings, including the records from the original sentencing, records on the modification motion, and the final compassionate release decision.

*Id.* (citations, quotations, and alterations omitted).

3

b. Analysis

Hague's review of the 3553(a) factors focuses heavily upon her health conditions that enhance her risk should she contract Covid. As noted above, however, with zero positive inmate cases within her prison, Hague's risk of contracting the virus is speculative at this time.

More importantly, while Hague highlights that she committed a white-collar crime, she dramatically understates the conduct in which she engaged. Hague's conviction for theft of public funds was not a simple matter of filing a false tax return. Instead, she engaged in a years-long scheme to consistently file fraudulent returns. She recruited others to work on her behalf to expand her fraudulent. The PSR notes the financial scope of her actions as follows:

> As a result of HAGUE'S conduct and her co-conspirators' conduct that was reasonably foreseeable to HAGUE, the Internal Revenue Service paid at least approximately in refunds on at least 786 false claims for income tax refunds in the tax years 2009 through 2012 to HAGUE, her co-conspirators, and claimants. The parties agree that, in lieu of a statistically valid extrapolation analysis, which has not been conducted, 50% is a reasonable estimate of the percentage of loss due to fraudulent claims submitted in the scheme. Applying this percentage to $3,551,095- the total claims that were reasonably foreseeable to HAGUE equates to approximately $1,775,548 in fraudulent claims. Thus, HAGUE'S reasonably foreseeable loss amount is $1,775,548.
>
> According to the government, HAGUE received $462,467 from this scheme and it appears that she never claimed any of this income on her own tax returns.

Doc. 18 at 10.

As seen above, Hague defrauded the Government over and again through her acts. She further enriched herself to the tune of over $460,000 through her scheme. As a result of her conduct, the Court found that a sentence at the high end of the advisory guidelines range was appropriate. Hague has nearly 24 months of her 57-month sentence left to serve. Given the

4

nature and circumstances of her offense, the Court finds that reducing her sentence at this time would not satisfy the need to deter her from future misconduct.

Based upon a review of the totality of the factors listed in § 3553(a), the Court hereby DENIES Hague's motion for compassionate release along with both the supplements.

IT IS SO ORDERED.

| | |
|---|---|
| February 4, 2021 | /s/John R. Adams |
| Date | JOHN R. ADAMS |
| | UNITED STATES DISTRICT JUDGE |